4-25-0661, People of the State of Illinois, v. Stephen Michael Croom. Counsel for the Appellant, could you please state your name for the record? Joshua Scanlon. Thank you. And Counsel for the Appellee, could you please state your name for the record? Matthew Goldman, Your Honor. Thank you. Mr. Scanlon, you may proceed. Thank you, Your Honor. May it please the Court, Counsel. My name is Joshua Scanlon. I'm with the Office of the State Appellate Defender. And I am here today representing Stephen Croom in his appeal and requesting that this Court reverse one of his convictions and remand his case either for a new trial, for further crankle proceedings, or for a new sentencing hearing. Given time constraints today, I intend to focus my argument on issues 2 and 3 from the briefs involving the propensity evidence and the performance of crankle counsel during the crankle proceedings. And obviously, if there are any further questions, I'll be happy to answer those on the other issues. With regard to propensity, the propensity evidence in particular, we argue that the evidence in this case was not even sufficient for one of the accounts of the criminal sexual assault. But regardless of any sufficiency argument, Mr. Croom should receive a new trial where the alleged propensity evidence in this case that was admitted against him during trial was severely and unduly prejudicial and heavily outweighed any potential probative value of that evidence. Now, the Court abused its discretion in admitting this evidence in an unlimited capacity due to the balance of probative versus prejudicial value. The propensity evidence here involving the incident with CT was severely and unduly prejudicial because of the surrounding nature and circumstances of that incident, specifically where it was more heinous than the charged offense that was the issue at trial. Most of the allegations involved in the incident with TT had very little to do with the incident of sexual assault that was being presented ostensibly for propensity purposes and were significantly more violent and dangerous and indicative of a bad actor than the evidence involving the instant offense, the charged crime involving MB. In particular, where they involved things such as choking, slapping, grabbing TT and pulling her back into the apartment, carrying her around, and otherwise being extremely violent, as well as the additional evidence from Nurse Bianchi involving the injuries from these violent encounters, most of which, almost all of which, had nothing to do with the alleged instance of criminal sexual assault. Ultimately, this was a matter for the Court to make a determination by weighing the prejudicial value versus any probative value. And the Court's failure to weigh that when presented with the option of unlimited evidence of this encounter coming in is the error that the Court had in this case. Excuse me, Counselor, where is the evidence that the Court failed to weigh it? Did I misunderstand what you're saying? That the Court failed to engage, or I should perhaps say re-engage, with the balancing of probative versus prejudicial value once the State argued that all of it should be allowed in after Counsel's statement that he wanted to present evidence of the consensual encounter. So the Court did initially weigh probative versus prejudicial value and initially limited the evidence because it recognized that there was significant allegations of violence that weren't related to the incident of sexual assault. However, it did not then reconsider that once additional evidence was argued by both parties to be admitted. Instead, it allowed it to come in in an unlimited capacity without reassessing that in that instance, if that makes sense. And that is the Court's error because it was ultimately the Court's decision and the Court's duty to weigh the prejudicial value versus the probative value. The Court's failure to do so and to allow this all in in an unlimited capacity where it was so heavily and unduly prejudicial was the error of the Court that needs to be dealt with in this case. But didn't the defendant open up the door when he agreed that it should come in? Certainly, there's the issue of Counsel's effectiveness in dealing with that evidence. And I intend to address that. But as an initial matter, to the extent that this is also the Court's responsibility and the Court's duty and therefore the Court's error, Counsel's action was in response to the Court's initial exclusion of the evidence or, excuse me, the refusal to exclude the evidence. And while I argue that Counsel's response was ineffective, that doesn't prevent it from being the Court's duty ultimately to engage in that weighing, that balancing test. And the fact that Counsel's actions were in response to the Court's admission of a portion of that evidence still ultimately leaves us originally and fundamentally in the Court's wheelhouse. However, Counsel's response was also ineffective to this. And even to the extent that the Court might be given leeway for the fact that Counsel then brought up and suggested including evidence of consent, Counsel's choice to do so and his choice to essentially, well, his failure to make a reasonable choice or to reasonably understand what he was doing ultimately was ineffective in this case. Because Counsel suggested that he wanted to bring in evidence of consensual sexual encounters that Mr. Kroom and T.T. were involved in, but then he failed to actually utilize those consensual encounters as an argument that she had in fact consented in the sexual encounter that was involved. And in essence, Counsel brought up a problem, created the problem, and suggested that he was going to use evidence for purposes of arguing consent and then failed to argue consent. He also failed to understand that his choice to do so was going to have the effect of allowing the State to bring in that evidence in the first instance in an unlimited capacity as evidenced by his objection at trial and his post-trial motions following trial. Because Counsel failed to make a sound and strategic decision when he asked to have this additional evidence admitted and then failed to object to the State admitting the entire incident in an unlimited fashion, he was deficient in his representation at that point. And this is an instance where in many cases we argue ineffective assistance of Counsel and we have an argument over prejudice. The prejudice here is palpable just based on the unduly prejudicial nature of the propensity evidence. Again, largely based primarily on these extensive allegations of violence that were involved in the incident involving T.T. And particularly because the State was then allowed to use that additional evidence of violence in arguing propensity where it wasn't actually connected to a propensity purpose. As I said, most of the allegations of violence did not directly involve the incident of alleged sexual assault with T.T. They involved other matters, an argument over chips and salsa. They involved some jealousy over her being engaged with somebody else at this party and didn't lead to or become involved in an incident of sexual assault which was separated in time. So ultimately Counsel's failure to understand what he was doing when he asked for evidence of consent and then his failure to ultimately even utilize that evidence to argue consent shows both deficiency and the prejudice involved is palpable from the introduction of the additional allegations of violence. So that is the argument with regard to the propensity evidence. With regard to the Crankle issue, we argue that Crankle Counsel, in this case, in arguing Mr. Croom's allegations of ineffective assistance against Trial Counsel was himself ineffective. And the primary way in which Crankle Counsel failed was to act as an advocate. Ultimately it goes to the sort of the core of what Crankle Counsel was supposed to be doing in this case, which was acting as a zealous advocate on behalf of Mr. Croom as opposed to simply sort of in a neutral manner going through the motions. Counsel failed to independently investigate the claims of ineffective assistance. He failed to exercise professional judgment in determining what claims he would be raising on Mr. Croom's behalf. And he ultimately failed to provide any legal analysis of the claims that he raised on Mr. Croom's behalf. These failures ultimately resulted in a complete abandonment of his role as a zealous advocate on behalf of Mr. Croom. And under these circumstances, prejudice should be presumed where Counsel essentially abandoned his role as advocate for Mr. Croom. Because he abandoned his role as an advocate, he failed to provide any meaningful adversarial testing, as sort of has been explained in the chronic cases and in the Downs case. Even if prejudice weren't to be presumed, however, Counsel's failures also show demonstrated prejudice in this case. Prejudice is demonstrated by the fact that it necessitated Mr. Croom presenting the exhibits that he believed Counsel should have presented on his own and attempting on his own, pro se, to obtain evidence from the witnesses that he believed Counsel should have presented. Mr. Croom's efforts show that there were in fact documents that were related to his claims, that would have supported his claims to an extent, and that there were witnesses and that he was able to obtain affidavits from Tanya Turner and Calvin Lundy to sort of support his arguments regarding ineffective assistance by trial counsel as well. These demonstrate that there were things that Krankel Counsel could have utilized during the Krankel proceedings to demonstrate ineffective assistance by trial counsel, or at least to make cogent legal arguments surrounding those claims of ineffective assistance. Now, had Counsel investigated, he would have conducted an independent investigation, he would have had access to this additional evidence, and he could have formed, as I said, a cogent legal argument. Ultimately, Counsel's failure to do this, and the evidence that Mr. Croom was able to produce pro se on his own, demonstrates that, or excuse me, undermines confidence in the outcome of the Krankel proceedings, and demonstrates at least a reasonable probability that had Krankel Counsel been performing as a zealous advocate on behalf of Mr. Croom during the Krankel proceedings, there is at least a reasonable probability that those proceedings would have resulted differently. If the justices have no further questions, then I would speak to you again in rebuttal. I do have some questions that I would like to discuss with you regarding the issue that you did not bring up, and it's the issue with regard to the penetration of the anus and the use of force on that. Certainly, Your Honor. So I would like to discuss that with you, and I guess ask, what is the evidence in the record that the digital penetration was by use of force? What is the evidence in the record? Well, I argue that there is not evidence in the record that it was achieved by use of force. It was something that occurred during what MB admitted to be a consensual activity, the Oral Sexual Act. It occurred at that time. The only evidence of anything at that moment is that that was when she began to say no, that that was what instigated her not consenting or not being OK with the other acts. So why is that failure of the defendant to stop at that? Why isn't that itself enough for evidence of use of force? Because non-consent is not sufficient for use of force. Use of force needs to be something that precedes or compels the submission of the person, of the victim. And here there's no evidence of Crume doing anything other than the act itself. And the act itself and any quote-unquote force that is required to commit the act itself is not something that's sufficient to show a use of force to compel submission to that act or to force submission to that act. Lacking anything, any other activity by him, the first statement of something that might be considered use of force to compel an act is his action of then flipping her over to engage in the other acts of penetration that are at issue. Barring that, there is no evidence of force being used to compel her to submit to the act of digital penetration. OK. So are you essentially conceding then that there was no force used? Because I didn't gather that from your brief. I apologize, Your Honor. We don't believe, for Mr. Crume, I do not believe he used force in the act of digital penetration. That is our argument that he did not use force in that act. I concede that there is sufficient evidence of force used for the other acts of penetration, if that is what your question is.  That there is some evidence of it. Whether or not that would be different in a new trial, given a new trial, is something I think we would leave up to that question. But for purposes of this, for the other two acts of penetration that followed the act of digital penetration, I concede that there is some evidence of force involved in those two acts. In the after, once he flipped her over, correct? Yes. Yes, Your Honor. OK. So what is your position then with regard to when it initially started as consensual and then she says no? So is that – I guess I'm trying – because I didn't see in the record any evidence, I guess, when it turned from consensual to non-consensual. Well, at trial she testified that he began by giving oral sex to her and that was OK with her and she was OK with that and that was – so that was a consensual act and the court found that that was consensual. She also testified that the digital penetration occurred during while the oral sexual act was going on and that she then said no because she didn't like that act. And after that, he flipped her over and the other two acts of penetration occurred. Our argument is simply that there was no evidence of him using force other than the force inherent in the act of digital penetration until he – until she testified that he flipped her over and engaged in the other two acts of penetration where she testified that his weight was on top of her and that she was trying to flip over. So, yes, there was some evidence of force for those two acts but not for the act of digital penetration. That is where it became non-consensual but not where he first used force. OK. Thank you. If there are no further questions, we would ask that this court reverse Mr. Croom's conviction on the one count of criminal sexual assault and otherwise remand his case for a new trial for further critical proceedings or for a new sentencing hearing. Thank you, counsel. I see no other questions. You'll have an opportunity on rebuttal. Mr. Goldman. Thank you, your honor. I'll begin with the point raised by Justice Grishow regarding the use of force before turning to the points raised by defense counsel. It's the state's position that there are a couple of different ways that force could have been come to as a proper conclusion for the jury. First, there are cases which state that force does not necessarily need to be at a particular time, but instead in the course of the sexual assault itself. I cited numerous cases that discuss this in my brief. The one that's most on point is Spryne from the 1st District. I know that defense counsel argued that certain cases that Spryne relied upon and that we cite in our brief is distinguishable because it pertains to aggravated criminal sexual assault instead of criminal sexual assault. I would argue that their attempt to distinguish this essentially inverts the way that we should interpret statutes. The statute for aggravated criminal sexual assault describes certain acts that can be done that elevate it to the level of aggravated criminal sexual assault. And it adds the language of must be done essentially in the course of the criminal sexual assault. Whereas when you look to the criminal sexual assault statute, it simply says that they have to prove that there was force or use of force or threat of force. This language of in the course of the criminal sexual assault that's added for those specific acts in the aggravated criminal sexual assault statute could only reasonably be interpreted as a way to limit the scope of what should be considered, not expand it. If one were to add that language to the use of force or to the threat of force, we would not expect that to suddenly open up the timeline of when courts should consider force or threat of force. I think everybody would agree that that would limit the scope of when a trier fact should consider these things and when it should be considered relevant for that factor. So I would argue that because the criminal sexual assault statute has less limitations than the aggravated criminal sexual assault statute in terms of that kind of temporal limitation. The this court should conclude that where courts have concluded that these things happening a little bit later on in that course of conduct in the act of the criminal sexual assault still can be used. By the trier fact and concluding that that force or violence took place, it should likewise be be allowed for this and that the spring court was correct in applying force that occurred essentially immediately after the sexual assault in concluding that this was proved. But additionally, just as Chris shows focus on the withdrawal of consent, the explicit statement by the victim that she said, no, that is also very, very important for this analysis and determining that force was actually is the threat of force was actually used. Prior to or during the digital penetration itself in Denbo, this court analyzed it admittedly different facts, but essentially a situation where there was passive use of the person's body to complete the sexual assault. And the court ultimately concluded that there was no threat of force or use of force due to the fact that they never conveyed that they were no longer okay with what was happening. They never said out loud that they wanted to stop. In this case, that very factor that that this court found is missing in Denbo was present here. The defendant was told explicitly. No, the testimony, it was something to the effect of that. They said, no, they wanted to stop. And then the defendant continued to digitally penetrator. This kind of act, a reasonable try, or fact could conclude was essentially that passive bodily inert to the continuing of the digital penetration in a way that prevented her from withdrawing as she had said she, she essentially wanted to do. Until he ultimately flipped her over and did another kind of sexual assault. Additionally, this court could conclude that the evidence was sufficient because the defendant overcame the victim through a superior physical size strength and the confinement of the victim in his bedroom. What was the evidence of that for this particular act? We know it was later. There was testimony later once he flipped her over. But what about during the digital penetration shows that it was his physical size or force that caused her to be unwelcome? I guess you would say. Sure, so the certainly she doesn't testify specifically. He was so big that I felt I couldn't fight him off or something of that nature. But the. She does testify that she was essentially terrified about what he would do to her. She's even said things to placate him after the fact, essentially assuring him that she didn't feel that she was sexually assaulted. These are all things that went to her mindset to show that she she was, in fact, very fearful of him and the circumstances surrounding. The assault were quite clear. You know, the jury would have had ample opportunity to see his size in court, how tall he was. The pretty sense investigation report indicated he was, I believe, 6 feet, 2 inches, 190 pounds. So he was not a small person. And the this combined with the fact that he applied her with drugs and alcohol, he had her in his bedroom. She was feeling unwell. She was there without transportation. All these things taken together show that she essentially was in a position where her will was overcome. Now, whether or not she necessarily says that out loud, certainly, as I said before, she doesn't specifically say that, but she did indicate that she did not want to be digitally penetrated by him. And then didn't stop and then didn't flip her over. It did not. In fact, she specifically testifies that he did not stop when she said no. He did then flip her over shortly thereafter. Stopping. Well, she specifically asked the question if when she said, no, did he stop? She said that he did not stop. And to be clear, he did flip her over shortly thereafter. But I think that the record is quite clear that this is not something where he was told. No, he then immediately withdraws, flips her over and try something else. There's no evidence about how much time elapsed, is there? The record is vague as to that. I would agree. The record is vague as to exactly how much time passed after she said no to when she was then flipped over. But I would argue that there was no specific amount of time should need to pass when a person says no, no means no. And the defendant should have understood that when he digitally penetrated somebody without asking them first, when they say no, that is the time to stop. Certainly, possibly before would have been the time to stop as well. But at the very least, when she says no, it should have been abundantly clear to him that that was the time to stop too. Unless there are further questions on that point, I'll turn to the points raised by defense counsel. Thank you, Connor. Beginning with propensity. The defense counsel essentially raises this argument in a way that conflates the issues. The court was very clear that it was only going to admit this prior offense in a very limited fashion is going to exclude this extra evidence of violence. The defendant now claims that claims was erroneous on appeal. It was only because defense counsel made it very clear that they were going to pursue this theory of consent, and they're going to introduce this prior consensual sexual encounter that the court said, well, if you're going to do that, you're opening the door. I'm going to let them introduce this evidence of the violence in order to explain why a consensual encounter on one day turns into an unconsensual encounter. Shortly thereafter, the violence intervened, and obviously feelings about an individual can change based upon that. The defense counsel made the choice, the strategic decision, that they wanted to pursue this consent defense, disclosed in discovery that they're going to do this, made it very clear in their discussions with the court that they're going to do this. And ultimately, this evidence was presented at trial. Even in this appeal, again, an oral argument, we don't hear any actual argument that the admission of that prior sexual assault itself alone, without the additional evidence of violence, was improper. And if it was proper, counsel's decision then to introduce this evidence of consent, even if it was prompted by that, that doesn't matter. They made a choice based upon properly admitted evidence. And then once they introduce that evidence of consent, the court's decision that this opens the door clearly is correct. The violence is the explanation for why the TT's feelings towards the defendant changed. So these things cannot be conflated. The violence was not used for propensity in the way that the instance of the prior sexual assault was. The violence was specifically admitted simply to rebut this claim that there was consensual sex and that the other instance may have therefore been consensual as well. The choice to pursue the consent theory was an obvious strategic choice, and for that reason, this court should conclude that there was no ineffective assistance of counsel. Now, defense counsel on appeal argues that this was not pursued in a particularly perfect way. Certainly, it could have been argued to enclose an argument, for example. But throughout a trial with live testimony, with live witnesses, certain evidence comes in, certain evidence doesn't. People are either more or less credible based upon the way that they testify on the stand in a way you can never know from reading a police report or seeing a recording of a prior interaction. All of these things can impact the way that the strategy unfolds at trial. And the fact that counsel may have decided to either abandon the strategy or simply just to not emphasize it by the time closing arguments occurred does not mean that the choice at the time that it was made to pursue a consent strategy or to introduce this evidence of a prior consensual sexual encounter was absolutely unreasonable. Obviously, consent in certain situations could be a very persuasive thing. For the fact that it did not work out in this case, or even that counsel decided that it wasn't working out and therefore should not be emphasized in closing arguments, does not mean that this was not a valid trial strategy and was not a reasonable strategic decision at the time that it was being made. And so for these reasons, we would ask that this court reject the defendant's argument in regards to propensity. If there are no further questions on that point, I'll turn to the Krankel issue. The defense raises this issue related to Krankel counsel's performance at the Krankel hearing. I think the simplest way that this court can dispose of this argument is through the lens of prejudice. That's because all of the evidence that defense counsel argues should have been presented by Krankel counsel was actually ultimately shown to the court. The affidavits were shown to the court and defendant described what he believed the nurse would say. The court determined that the affidavits would not have changed the outcome, and the court determined that the nurse's testimony regarding how this encounter essentially began consensually was just duplicative of what the victim herself admitted to on the stand. And so we know that based upon this, that there was no prejudice because essentially the court looked at the evidence and told everyone that on the record. What this means is that had counsel gone out and gotten these affidavits, had counsel investigated further this nurse and found all of this information on their own, it would have been the same result. The court would have looked at it, decided it wouldn't have impacted the outcome and moved on from there. And so for that reason, this court should reject this on the basis of lack of prejudice alone. But, of course, counsel is also arguing that prejudice should be presumed in this case. I would argue this court should emphatically reject this. The Illinois Supreme Court has been very, very clear about the limited application of chronic and how in order for that to apply, it has to be a complete failure of counsel to engage in this process. Simply not being quite zealous enough, simply not pursuing this witness or that piece of evidence. Those are all things that are clearly and readily analyzed under the Strickland standard. Courts all the time analyze whether or not counsel made a reasonable strategic decision by not pursuing a particular theory or particular piece of evidence. And those are matters that are right for prejudice analysis to determine whether that evidence or that witness have made a difference. This is not a situation in which counsel failed to show up or failed to participate at all or failed to file a motion entirely. This is a situation in which he did all of those things. And what the defense is really complaining about is the quality of the job that counsel performed. And when it's a question of quality, not whether or not you existed as counsel, that is something for Strickland, not for chronic. I would argue that the only Supreme Court's decision that I cited in my brief on this issue was quite clear, especially in a critical context, how deficient counsel must be for chronic to apply that this does not fit that situation. Unless there are any further questions for all these reasons, I would simply stand on the strength of my brief as written and argue that this court should affirm the trial court and reject the defendant's claims. Thank you. I see no questions. Thank you. Counsel. Thank you. Yes, I'd like to just hit maybe three points, one for sort of each of the arguments that we've addressed. First, with regards to the state's argument in regard to force, and particularly in utilizing these cases that dealt with aggravated criminal sexual assault. The question isn't about a narrowing or a widening of the frame given sort of the underlying offense of criminal sexual assault. The question is, what was this, in the course of language, being used for in aggravated criminal sexual assault? And it's in particular to the aggravating factor. The cases that the state cites all deal with the question of whether or not bodily harm, generally speaking, I believe it's the aggravating factor of causing bodily harm in the course of the offense. And these cases have found that finding that bodily harm was caused relatively shortly after the alleged sexual assault is sufficient for purposes of this aggravating factor, for purposes of aggravated criminal sexual assault. And to move those cases beyond that is error, and ultimately the Spring Court cited these cases, but without recognizing or acknowledging the fact that they were dealing with a different factor than the underlying element of force. The force that has to be significant for purposes of underlying criminal sexual assault is the force that compels the submission. And ultimately the problem with the allegation of force for the count of digital penetration is a lack of force that compelled submission to that act. Also, I believe that the testimony as to whether or not he stopped that particular act is not nearly as clear as the state suggests that it is. The state at the time that was asking about whether or not he stopped was also asking about whether or not he stopped the oral sex that was at issue, and also I think went to the overall whether or not he stopped sexual activity at all. And I don't believe that the testimony is so clear that when she said, no, he didn't stop, it was referring specifically to the act of digital penetration. Certainly not clear enough to say that he then was involving force and certainly not in a time period within any longer or lengthened time period that suggests it wasn't like within a matter of seconds or a second that he then engaged in the other acts. So that being said for that, we don't believe that there is sufficient evidence of force for that particular act in this case. With regard to the propensity evidence, the state argues that ultimately the allegations involving TT were used just to argue propensity for the commission of criminal sexual assault or that they weren't used for any purpose other than propensity. The extraneous allegations of violence that caused the undue prejudice here were used by the state in closing to argue specifically that Mr. Crume was a violent person who was a person who got violent when he didn't get what he wanted. And that didn't go to his general propensity to commit sexual assault. It went to a greater and more prejudicial propensity to commit violence, to just generally be a violent person and to suggest that it was sort of limited in that way doesn't take account of what the state actually used that those extraneous allegations of violence for. Can I interrupt you there with regard to the propensity? Was it invited error on behalf of counsel to let the whole encounter with TT in rather than requesting some limiting instruction? We argue I argue no in in the first instance that it's not invited error because his choice to do so such that it was was in response to the fact that some portion of that evidence was going to come in. And so it's not unreasonable for in general for an attorney to try to mitigate that evidence. However, in the alternative, were it invited error and even if it weren't invited error, counsel was ineffective in the choice that he then made to not object to having an unlimited evidence of the incident involving TT. Even if even if the initial request to have consent was acceptable on counsel's part, his then failure to object to limiting that evidence to limiting out the violence or some level of that violence was itself ineffective and led to ultimately an unlimited admission of all of these extraneous allegations of violence. I see that my time is up. If I may just briefly conclude. All of this being presented, we ask that this court reverse Mr. Croom's conviction on the 1 count of penetrate of digital penetration and otherwise remand his case for a new trial for new critical proceedings or for a new sentencing hearing. Thank you. Your honors. Thank you counsel. We appreciate your arguments. Take this matter under advisement.